Argued and submitted January 31, affirmed March 22, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# SHERRY RENEE WRIGHT,
*Appellant.*

037114; A124056

131 P3d 838

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a conviction for misdemeanor driving while under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of her petition to enter into a DUII diversion agreement. ORS 813.215. In seeking diversion, defendant had the burden of proving, *inter alia*, that she had not "participat[ed] in a [DUII] diversion program or in any *similar alcohol or drug rehabilitation program*," ORS 813.215(3) (emphasis added), within the preceding 10 years. ORS 813.215(4). The trial court determined that defendant had failed to make that showing, and we affirm.

Before describing the particular circumstances presented here, it is useful to briefly summarize the statutory framework governing DUII diversion agreements. When a defendant is charged with DUII, she may petition the court for a diversion agreement. ORS 813.200(1). The defendant must submit a "sworn statement" to the court "certifying" her eligibility. ORS 813.200(4)(h). The diversion agreement provides that the defendant shall plead guilty and participate in a court-ordered treatment program in exchange for the court suspending entry of a judgment of conviction. ORS 813.230. Upon successfully completing the program, the defendant may have the DUII charge dismissed. ORS 813.250.

Before a defendant may enter into a diversion agreement, however, the state may object to the defendant's petition and request a hearing. ORS 813.210(5). The defendant then must prove by a preponderance of the evidence that she is eligible for the program. *See generally State v. Dendurent*, 64 Or App 575, 580 n 1, 669 P2d 361, *rev den*, 296 Or 56 (1983). Once a defendant establishes eligibility, whether contested or not, the decision to allow diversion in a particular case is a matter of discretion left to the trial court. ORS 813.220.

The requirements for eligibility are found in ORS 813.215, which states, in part:

"A defendant is eligible for diversion if:

"* * * * *

"(3)   The defendant was not participating in a [DUII] diversion program or in *any similar alcohol or drug rehabilitation program* * * * in this state or in any other jurisdiction on the date the defendant filed the petition for a [DUII] diversion agreement; [and]

"(4)   The defendant did not participate in a diversion or rehabilitation program described in subsection (3) of this section * * * within the period beginning 10 years before the date of the commission of the present offense and ending on the date the defendant filed the petition for a [DUII] diversion agreement[.]"

(Emphasis added.) As amplified below, the resolution of this dispute turns on the meaning and application of the emphasized language.

Against that statutory backdrop, we turn to the facts of this case. In May 2003, defendant was charged with misdemeanor DUII. ORS 813.010. Before trial, defendant petitioned, pursuant to ORS 813.200(1), to enter into a DUII diversion agreement. Defendant certified to the court that she was eligible for diversion because she had never participated in a court-ordered treatment program. ORS 813.200(4)(h).

The state opposed defendant's petition, arguing that defendant was ineligible for participation in diversion because she had, in fact, participated in a "similar alcohol or drug rehabilitation program" within the preceding 10 years. In particular, the state presented evidence that, in the course of a juvenile dependency proceeding in 2001, defendant had been ordered by the juvenile court to complete drug and alcohol rehabilitation treatment. Specifically, in 2001, the Department of Human Services (DHS) had removed defendant's youngest child from her home based, in part, on allegations regarding defendant's substance abuse. The juvenile court subsequently found that that child was within the jurisdiction of the court, and the child was placed in substitute care. As the dependency matter continued, defendant was involved in an alcohol-related automobile accident. Subsequent testing showed that defendant's blood alcohol content level was 0.064 percent. Defendant was not charged with

DUII, but, because of the pending dependency matter, defendant's attorney in the dependency matter referred her to the Tualatin Valley Center for a drug and alcohol assessment.

On December 18, 2001, the juvenile court,[1] following a permanency hearing, entered a judgment that included the following provisions:

"4. DHS shall return the child home to mother within 120 days, with discretion to make decisions in the best interest of the child about the transition.

"5. Mother shall successfully complete treatment at Tualatin Valley Center.

"* * * * *

"11. Mother shall sign releases of information with evaluators and treatment providers to allow the court and DHS access to evaluations and treatment reports."[2]

From the record adduced in the 2003 DUII diversion hearing, it cannot be determined whether the child was, ultimately, returned to defendant within 120 days.

Given the state's submission in opposition to diversion, defendant, in reply, changed her position. She did not dispute that she had, in fact, participated in an alcohol or drug rehabilitation program in response to the juvenile court's 2001 judgment. Instead, defendant argued that, for a treatment program to be considered preclusively "similar" to DUII diversion for purposes of ORS 813.215(3) and (4), the party petitioning for diversion must have agreed to participate in that prior program in exchange for some *lesser criminal sanction*. As support for that proposition, defendant invoked *State v. Dunbrasky*, 122 Or App 90, 856 P2d 1054 (1993). Thus, defendant reasoned, because matters relating to child custody are not criminal in nature, the program in

_____

[1] The same judge who signed the December 2001 "Judgment from Permanency Hearing" in the dependency matter denied defendant's petition for diversion in this case.

[2] The "Judgment from Permanency Hearing" included other provisions addressing defendant's abuse of controlled substances and alcohol, including requirements that defendant not use or possess illegal controlled substances or alcoholic beverages, that she not enter establishments serving alcoholic beverages, that she not knowingly associate with persons who use illegal drugs, and that she "participate in community 12-step support groups at least once per week * * *."

which she participated in 2001 necessarily was not "similar" to a DUII diversion program and, thus, her prior participation did not render her ineligible for diversion.

The trial court denied defendant's petition and rendered the following findings of fact and conclusions of law:

"In this case, I think the program that the defendant entered into as a result of the [permanency] case is similar to the treatment that she would receive in the diversion program, the same treatment providers would provide it, Tualatin Valley[.]

"* * * * *

"So that suggests to me that the treatment is very similar to what she would have received if she were in the diversion program. So if I read [ORS 813.215] literally, * * * I will find that she has participated in a similar alcohol or drug rehabilitation program.

"Did she receive some benefit for that? Well, she got her child back, so it's not a diversion program, it was not a diversion program and wasn't set up to be, but she did receive a benefit, which was—I think it's safe to say had she not completed that treatment program successfully, she may not have had her child returned to her. But I don't know that I need to go that far. Just reading literally, she has completed a similar program, and so I think she is disqualified from the diversion, despite the wording in *Dunbraski*."

Thereafter, following a stipulated facts trial, the court convicted defendant of misdemeanor DUII.

Defendant appeals the denial of her petition to enter diversion and renews her "lack of 'similarity' " argument.[3] As before the trial court, defendant does not dispute that she did, in fact, participate in an "alcohol or drug rehabilitation program" in response to the 2001 juvenile court judgment. However, defendant does contend that the program in which she participated in 2001 was not preclusively "similar" to

---

[3] Defendant also raises other, similar arguments, which are identical to those that we rejected in *State v. Young*, 196 Or App 708, 103 P3d 1180 (2004), *rev den*, 338 Or 583 (2005), which we issued shortly after defendant filed her brief as appellant in this case. Defendant concedes that *Young* is dispositive as to those arguments.

DUII diversion because "[d]efendant did not receive a reduced criminal sentence" in exchange for her participation in the 2001 treatment program. Defendant's argument in that regard is predicated on *Dunbrasky*.

In *Dunbrasky*, the defendant had previously been convicted of possession of methamphetamine. 122 Or App at 92. In the methamphetamine case, the trial court had suspended the defendant's sentence in exchange for her successful completion of drug and alcohol treatment, along with other conditions. *Id.* Approximately three years later, the defendant was charged with DUII and sought diversion. The state objected, arguing that the defendant's participation in the previous program rendered her ineligible for diversion, and the trial court agreed. *Id.*

We affirmed. In so holding, we rejected the defendant's argument that "similar drug or alcohol treatment programs" were necessarily those "related to DUII arrests." *Id.* Rather, we concluded:

> "In any case, a court may impose a milder sanction in exchange for the defendant's agreement to address an underlying alcohol or drug problem. Because the first program addressed a substance abuse problem and was accepted by defendant in exchange for a milder sanction, it was sufficiently similar to the diversion to disqualify her from diversion in this case."

*Id.* at 92-93.

Defendant argues that, in context, the reference to "in exchange for a milder *sanction*" in *Dunbrasky* (emphasis added) necessarily refers to a milder *criminal* sanction. Defendant reads *Dunbrasky* too narrowly. To be sure, *Dunbrasky* arose in a context in which the defendant, through her participation in the prior treatment program, had avoided the imposition of a greater criminal sanction. But not all "sanctions" are criminal—and *Dunbrasky* did not purport to impose such a limitation. Rather, a "sanction" is commonly understood to be a substantial adverse consequence imposed as a result of a person's conduct, often when

that conduct violates a law or legal obligation.[4] Properly so understood, the judicially compelled loss of custody of one's child because of one's conduct is a "sanction."

With that understanding, the "similarity" of defendant's participation in the 2001 treatment program to a DUII diversion program is apparent. In the 2001 treatment program, defendant, like a participant in a DUII diversion program, was given the opportunity to avoid a substantial, judicially imposed adverse consequence related to her substance abuse by successfully completing a substance abuse program. Thus, defendant "accepted [the 2001 treatment program] in exchange for a milder sanction[.]" *Dunbrasky*, 122 Or App at 92-93.[5] The trial court did not err in denying defendant's petition for diversion.

Affirmed.

---

[4] *Webster's Third New Int'l Dictionary* 2009 (unabridged ed 2002) offers two related definitions of "sanction":

"3 : the detriment, loss of reward, or other coercive intervention that is annexed to a violation of a law as a means of enforcing the law and may consist in the direct infliction of injury or inconvenience (as in the punishments of crime) or in mere coercion, restitution, or undoing of what was wrongly accomplished (as in the judgments of civil actions) or may take the form of a reward which is withheld for failure to comply with the law * * * 10 : a restrictive measure used to punish a specific action or to prevent some future activity * * *."

[5] We acknowledge that the record does not disclose that, but for defendant's participation in the Tualatin Valley Center treatment program in 2001, she would *necessarily* have incurred the sanction of a continuing loss of custody. That is, it is at least abstractly possible that, regardless of defendant's participation in that treatment (and notwithstanding the juvenile court's manifest concern with her substance abuse), the juvenile court might still have returned her daughter to her. But the same can also be true of DUII diversion: Depending on the circumstances of a DUII prosecution, a defendant's agreement to participate in diversion may not be in exchange for a *certainly* "milder sanction" (or, conversely, the avoidance of a *certainly* more severe sanction). For example, in some cases, a defendant who opted for diversion might, had she or he proceeded to trial, have avoided conviction.